Next case is In Re Levine, 06-14-29 We are ready when you are, Mr. Posa. Good morning. This is an appeal from the PACNAS ex parte case, up from the board. It's our position, as you well know, that the claims under rejection should be allowed. Primarily, it's been an anticipation argument outside the office. There are a couple of claims that were found obvious. I would like to, as far as a little... You did get some claims allowed, didn't you? I don't believe so. You don't believe so? All right. It's been a while. We have a lot of cases. Yes. I'd like to take a little bit of time to discuss the invention, if that's all right. And then I would like to take a little time to discuss this piece of prior art. I'll call it the triple zero patent. It's by the same inventor in this case. There are three issues before the court. The first two involve anticipation. The last issue involves obviousness. And I'd like to concentrate on issues two and three, if that's all right. The subject matter here is chart records. Not real sophisticated. And I happen to have some charts used by my client in this invention. If you'd like to see the real thing, I don't know if I can... Mr. Posa, we have limited time, or you have limited time. Why don't you tell us why the triple zero patent doesn't meet the limitation printed alphanumeric options, which I guess is a key issue. It's not the most key issue, but it's our position that... Well, what is the most key issue? In the case of the two independent claims being argued here under issues one and two, it's all claims as far as the combination is concerned. These are both method claims, but primarily it's the second step in each case. In the case of the invention... What's the second step? Storing information? Storing information relating to the location of the options on the surface of this chart. The word location is very important. What this means is that prior to placing this special programming chart on the recorder, there is a priori recorded information regarding where things are on that chart. The triple zero patent, you place an ordinary chart to be recorded onto, and the operator uses buttons to advance the pen to a couple of concentric rings on that chart, where the set point will be programmed by the operator at that time. The recorder, in the case of the priori, has no idea of where it's going, where it'll end up. It does record... Part of the problem is that both the board and the examiner recognized that these inventions might work differently, but the bottom line was the claims that you chose to use. There was no effort to narrow those claims, and you claimed them so broadly that they essentially claimed the same thing. Not whether the inventions could be really characterized as different if you claimed them differently. That's understood, certainly. We could go back and narrow the claims after this. Why didn't you? We felt there was no need to do that. If you read these claims, and we're not even asking you to read these claims in view of the specification. We believe that certain terms used in these claims, given a plain, ordinary, customary meaning, fully distinguish over the prior art when the triple zero patent is truly understood for what it's worth. Give us an example. The triple zero patent, as far as you can take it, is it records the angle of a pen arm after a person looking at that instrument tells it, OK, stop. That's where I want a set point. And the triple zero patent, point of novelty there, really, has nothing to do with any fancy way of programming it. No. The point of novelty is... I don't understand what you're talking about. What's the difference? Between the prior art and the instant invention? Yeah, in this respect. What's the difference? As far as the instant invention is concerned, known locations on the chart are pre-recorded. The instrument knows where they are. And if you look at the appendix... But that's not what the claims say. Your claims talk about storing. And in the prior art, it's stored. Maybe the information is done in a less refined way or a less fancy way, but it's still stored, right? It doesn't store location. That's our point. It stores... The furthest that you can take the prior art in this case is the storage of an angle of a pen arm, which is not the location of a point on a chart for programming purposes. It simply isn't. And it can't be extended into that realm. And if you look at the evidence used by the board for this storage capability, they say, well, the prior art has a memory device. In fact, they misquote the function of the memory device. They say that, well, it must be used for this purpose. Well, it's not used for this purpose. When somebody programs, puts a set point into the prior art recorder, the angle of the pen arm is recorded after the fact, after a person looking at the instrument says, stop here. What about the obviousness rejection? That's... Claims 8 and 14. Yes. The examiner and the board conceded that... These claims, by the way, have to do with the fact that after this recorder has been programmed in the way that I just said, and the way in which the claims set forth, you don't really know. You don't have a record. Let's say that you don't have a record of what's happened. It happens to... When you program it, you get a chart with this weird stair-step pattern indicating how you programmed it. You could keep that, and it would let you know how it's been programmed. But let's say you forget it. Claims 8 and 14 have to do with the fact that you can put another one of those charts on there at any time after the fact. Press a button, and it will automatically go through the sequence that you used to program it in the first place, thereby giving you another written record of what you've done. It doesn't sound like a brilliant concept, but the question is whether these other patents indicated or not. Watanabe and... Well, Watanabe and Ishiguro. Right, well... And what's wrong with the disclosure of those references? Well, plenty. First of all... I won't even get into analogous versus non-analogous. If you look at the sections quoted... Well, you certainly can't get into non-analogous with respect to... Right, it wasn't argued below. That's fine. Ishiguro has to do with a robot. That writes on a surface. And it's really used only for that purpose. It's combined then with Watanabe, with the argument being that if you look at column 1, the background of Watanabe, it would be nice to have something stored in memory, so that you don't have to repeat a manual operation by setting or entering desired modifying values again. Well, does that suggest marking a new surface to obtain a record? No. Here's our position on that. There are three references used for rejection on obviousness grounds. Let's not forget that Levine 000 is the primary reference. It's not as though they're using Ishiguro and Watanabe in combination, and then that's it. No, they're saying that Levine 000 doesn't disclose that, doesn't teach, suggests the idea of writing a chart after the fact to show you how it was programmed using this unique sequence. The problem is that there is no prior art that you could combine with Levine 000 in order to enable it to do that in the first place, because Levine 000 doesn't have the capability of drawing out a chart after the fact, showing any sort of programming. It has a record, though, doesn't it? It only has a record of a pen-arm angle. It doesn't care where... And so adding another one is non-obvious in light of the references. Well, Levine 000 has no technical capability of doing what the claims set forth, regardless of how many references you pile on to try and get that limitation. It's simply not there. No, it's not a question of how many references. It's a question of what they say. What they say, and in combination... And you're telling me they don't say anything about obtaining a second record or provide the means for doing it. That's true in general and in particular with regard to this subject matter. Let's keep in mind this has to do with marking charts in a chart recorder. I thought your whole point was that what was missing, or you thought was missing, from the board's decision was an explanation of the motivation to combine. Not that these prior art references could contain the elements, but whether or not there was a sufficient motivation to combine. I'm saying both is true. There is no motivation to combine, certainly. I mean, it hasn't been articulated adequately by the board. If you look at their... If one of those patents disclosed making a separate record, it'd be hard to argue no motivation to combine, forgetting about what the Supreme Court's thinking about these days. I'm glad I'm here now instead of a little bit down the road. But you're saying the other patents don't disclose making a separate record at all. You can accuse me of being broad, alright? But we're not trying to get patent protection here on making a second record or something. I mean, this is all in combination with a chart recorder, having a pen to advance to known locations, to provide a record in the first place. Well, if claim 8 doesn't decide a second record, if it's writing the same record as in figure 1, then you're anticipated, or at least according to the patent office. It's dependent, however. It carries with it all the limitations from the claim from which it depends. To reject claim 8 on its own as though it were an independent claim, well, it's just not the right argument. How do you respond to the patent office's argument, the solicitor's argument that there's an obvious motivation, and that is once you get all the trouble to program something, you don't want to have to program it twice. You want to know what it is you programmed and where the programmed points are. Again, this is all in combination. If you look at their reasons to combine, they cite our claim language verbatim. I bring that out in the briefs. How can that possibly... And I know the term hindsight is overused. I'm not going to belabor that point. However, how could the motivation to combine be the exact same language from appellant's point? It doesn't make sense. And it doesn't relate to the language of the references used for the missing disclosure in the first place. And when it's all added up, the limitations of the dependent claims plus all of the steps of the independent claims, the Levine triple zero patent doesn't have the capability to do that in the first place. You want to save the remainder of your time for rebuttal? I do. You can use it, but you have less than two minutes. There's only one point. As far as issue two is concerned, the second set of claims beginning with claim nine, independent claim nine. I want you to ask the office what their position is on step two of this claim in particular, this idea of placing a chart in a known start position. Keep in mind that Levine triple zero has these concentric rings. When you put those set points on there, it doesn't care where annually around that chart it puts them. Start position as far as Levine triple zero is immaterial and irrelevant. We'll save the rest of your time, Mr. Pozo. Mr. Stahl. May it please the court. I'll start by responding to Appellant's challenges to the board's decision regarding the obviousness rejection. This is the first time we've heard any argument, as Judge Amali correctly pointed out, this is the first time we've heard any argument regarding the obviousness rejection other than hindsight. In Appellant's brief, pages 31 through 36, Appellant addresses the issue of obviousness. And his arguments are solely limited to the issue of hindsight and the issue of motivation. And as this court knows, the obviousness analysis is a multi-part test. Everybody's treatment of obviousness was pretty cryptic in this case, wasn't it? I mean, the board's whole discussion was about a couple paragraphs. And even in your brief, it's only a page or so. Well, in this case, Your Honor, we followed this court's guidance in Garzide. In accordance with Garzide, the best defense to a challenge of hindsight is rigorous application of a requirement for a showing of why one ordinary skill in the art would make the proposed combination. In this case, we had a combination of two references, Levine and view of Ishiguro. The examiner in this case went out and found an additional reference just for the purpose of teaching the motivation why one ordinary skill in the art would combine these references. So this is exactly the case that Garzide teaches, that applying a reference solely for the purposes of showing why one ordinary skill in the art would be motivated to make it. Well, where does Ishiguro or Watanabe disclose marking a new surface to obtain a record? Well, again, Your Honor, that issue was not raised in the appellant's brief in accordance with this court's case law. But what's your obviousness rejection, then? Our obviousness rejection is based on the examiner's finding at page 830 of the appendix. Through 831, the examiner established what Levine taught, what was missing. At 831, the examiner talks about what Ishiguro teaches. But what does Ishiguro teach which is relevant to Claim 8? Well, Ishiguro discloses... You kind of walk away from the basic obviousness rejection. Well, Levine teaches programming the chart recorder. But not a second one. Not a second one as in Claim 8, or otherwise Claim 8 would have been rejected as anticipated. So there's got to be something in Claim 8. Well, what Levine doesn't teach is generating a listing of the selections, other than showing the set point markings on the chart, showing the figure of the patent itself. You've just made a statement which I don't see in Claim 8. Further including the step of marking a new surface in response to a user command to obtain a record of currently selected options. Where is that in either Ishiguro or Watanabe? Ishiguro is dealing with robots. Well, Ishiguro teaches marking the product that's being worked upon, painted or etched and what have you. And doing that by teaching a machine, going through a set of instructions, step by step by step, and installing those instructions into a microprocessor. What Watanabe teaches is, rather than going back through the process of iteratively changing the process by doing each step over again from scratch, going into the individual step that needs to be modified and making that modification. So it's the combination of Levine's teaching of marking the chart and Ishiguro and Watanabe's teachings of modifying steps selectively that the examiner and the board found resulted in the claimed combination. And who teaches essentially the receipt? Printing of the receipt or the recording of the information? Your Honor, because Mr. Levine didn't raise that issue in the brief and never challenged the board's decision on that basis, and again I'll refer you to this board's decision in the Smith-Kline feature, and that's at 439, F30, 1312. The pinpoint's at 1319. The law is well established that arguments not raised in the poem's opening brief are waived. So he's limited to the motivation argument, is that what you're saying? That's correct, Your Honor. Now I'd like to turn to the issue involving the storage of locations. The claim, as written in Appendix Claim 1, recites storing information relating to the location of the selection. And the board found that that terminology was broad enough to encompass the value that's stored in memory. When the user moves the pen down to the chart, and I'm referring to the chart in the patent at A00, when the user moves the pen down to the value of 19, for instance as described in column 2 of the patent, down to a value of 19 and makes the selection, this device correlates that position on the chart with that value. This machine's not going to operate unless when it's measuring, when the chart recorder's measuring these values, that it can correlate between that value and a position in the paper. So the user moves the pen down, selects the value of 19, that value is then stored in memory. The claim doesn't require storing location information in memory. It requires storing information relating to the position in memory. And that's exactly what the value is. It's information relating to a location on the chart. This is a scale chart ranging from negative 40 to 100, and as the pen moves up and down the chart, as values change, the positions change, and there's a one-to-one correlation with regard to that. Any further questions? No, thank you, Mr. Stoll. Mr. Poser has a couple of minutes left. Really, nothing really other than I didn't expect to... We don't require you to respond. I understand. We do have arguments in our briefs, however, that it's our position that as far as the obviousness rejection is concerned, the office and the board didn't establish prime official obviousness in the first case. Our argument was that there was no motivation to combine it. If you look at page 27, 28 of our initial brief, when we talk about the fact that... But Mr. Stoll is saying that you premised your argument on motivation, lack of motivation to combine, rather than the defects in the references themselves. He's saying, in effect, you waived any argument about the defect, any defects in the references. Well, I don't think that's true. And if you go back and look at the briefs, you'll see that we did discuss what those references teach and how they're not relevant to the combination of the rejection. Thank you, Mr. Posa. Take the case under advisory.